# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Carneal v. Lynch and Others.

### February 7, 1895.

1. Partition—*Suit by Life Tenant.*—A tenant for life in one undivided moiety of property may maintain a suit against those who own the estate in remainder of that moiety, whether they are *in esse* or not, and the fee simple owners of the other moiety, and compel partition of the property; and, if not susceptible of partition in kind, may have a sale and division of the proceeds. Section 2432 and section 2562 of the Code.

2. Partition—*Tenants in Common.*—A life tenant of one undivided moiety of a parcel of land and the fee simple owners of the other undivided moiety, whose estates accrue under the same title, but at different times, are tenants in common of that land.

3. Judicial Sales—*Purchaser—Notice—Case at Bar.*—A purchaser at a judicial sale of a city lot cannot, after his purchase, make the objection that a street encroaches on the lines of the lot, where it appears that before the sale a plat was made of the lot distinctly showing the encroachment, which plat was referred to in the advertisement of the property as being at the auctioneer's room, where it could be seen by any one interested in the sale; and where it further appeared that the plat was exhibited at the sale, examined by the bidders, and the encroachment discussed in an open and general way. His ignorance of the facts disclosed by the plat is no excuse. He was put upon inquiry and is chargeable with knowledge of all facts to which this inquiry would have led him, if diligently pursued. In the case at bar there would seem to be no encroachment. Acts 1883–'84, page 494.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced August 9, 1893, in the chancery suit of William M. Lynch against Dorsie Lynch and others.

*Affirmed.*

Opinion.

The facts of this case appear in the opinion of the court, but the clause of the will referred to in the opinion is not set out in full. It is as follows:

"Sixth. I give to my two grandchildren, Wm. M. Lynch and Charles G. Lynch, children of my daughter, Martha R. Lynch, deceased, the house and lot situated at the corner of Grace and Jefferson streets, in the city of Richmond, Va., to be held by them for their joint and equal benefit during their lives, and at the death of either of them, the share of the one so dying to pass to his issue, according to the statute of descents. Should either of my grandsons, Wm. M. and Charles G. Lynch, die without issue, the share of the one so dying to go to the surviving brother, or his issue, if any; shall both die without issue, the property named in this clause to pass to their sister, Mollie A. Lynch, or her issue, if any."

*James Lewis Anderson,* for the appellant.

*Courtney & Patterson* and *Daniel Grinnan,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This is an appeal from a decree of the Chancery Court of the city of Richmond.

It appears from the record that Benjamin Sutton, by the sixth clause of his will, gave to his two grandsons, William M. Lynch and Charles G. Lynch, a certain house and lot on the corner of Grace and Jefferson streets, in Richmond, for their lives, with cross remainders to their children, and in the event of death of both without issue, then said property was to pass to their sister, Mollie A. Lynch, or her issue.

Charles G. Lynch died leaving two children, who, under the terms of said will, are now the fee simple owners of their father's moiety. On the 27th day of April, 1893, Wm. M.

Lynch, the life tenant in one moiety of said property, filed
his bill in the Chancery Court of Richmond, praying for a sale
of this property for partition, and a reinvestment of the pro-
ceeds, and for general relief.

To this bill he makes as parties defendant, his own five
children, remaindermen in his moiety, the two children of his
brother Charles, fee-simple owners of their father's moiety,
and his sister, Mollie A. Lynch. His children and his brother's
children are all infants, and appear by guardian *ad litem.*

All the proceedings in the case are regular, full, and com-
plete. The commissioner's report, and the evidence fully
establishes the propriety of granting the prayer of the bill.
The court decreed the sale, and it was made in accordance with
the terms prescribed to James D. Carneal. An upset bid was
put in, and at a second sale said Carneal became the purchaser
at $11,575, and on the 26th day of June, 1893, the court
entered a decree confirming said sale, but reserving to the pur-
chaser leave to have the title examined within a reasonable
time. Counsel for the purchaser examined the title, and made
two objections thereto. The court overruled both objections,
and on the 9th day of August, 1893, entered a decree fully con-
firming the sale to J. D. Carneal, and directing that he forth-
with comply with the terms. It is from this decree that the
case is before this court on appeal.

There are two assignments of error, which are the two
objections made by the appellant to the title to the property.
The first is that Wm. M. Lynch being only a life tenant in one
moiety of the land, the remaindermen of said moiety being
unascertained, and the other moiety being owned in fee simple
by infants, he, the said Wm. M. Lynch, had no power in law
to maintain a suit for partition and sale of the whole of said
land.

This presents the simple question whether a life tenant of
one moiety of land can maintain a suit for partition against

the remaindermen, *in esse*, of that moiety, and the fee simple owners of the other moiety.

The bill is framed in a double aspect, being brought under section 2432 of the Code, which provides for the sale of contingent estates, and under section 2562, which provides for the partition of lands. This latter section provides that "*Tenants in common, joint tenants, and co-parceners shall be compellable to make partition*," &c. If, then, Wm. M. Lynch, the life tenant in one moiety, is in law a tenant in common with the children of his brother, who are the owners in fee of the other moiety, it would seem clear that he can maintain a suit to compel partition against his co-tenants.

Mr. Minor says: "A tenancy in common is where two or more hold the same land, with interests accruing under different titles; or accruing under the same title, but at different periods; or conferred by words of limitations importing that the grantees are to take in distinct shares." 2 Minor's Insts. 494, citing 1 Stephen Com. 323.

Judge Lomax says: "A tenancy in common is where two or more persons hold lands or tenements in fee-simple, fee tail, *or for term of life*, or years, by several titles, not by a joint title, and occupy the same lands or tenements in common; from which circumstance, they are called tenants in common, and their estate a tenancy in common." 1 Lomax Digest, 641.

According to these high authorities, one of the conditions creating a tenancy in common is *where two or more persons hold the same land, with interests accruing under the same title, but at different times.* The record shows that the interests in this land accrued under the same title, viz., the will of Benjamin Sutton. It further shows that the interest of Wm. M. Lynch accrued not later than November 11, 1871, that being the date of the probate of Benjamin Sutton's will (the record does not show the date of Benjamin Sutton's death),

and that the interest of Dorsie Lynch and Charlie Lynch accrued September 21, 1881; that being the date of the death of their father Charles G. Lynch. It follows, therefore, that Wm. M. Lynch, the life tenant of one moiety, and the children of Chas. G. Lynch, fee-simple owners of the other moiety, are plainly tenants in common. *They hold the same land, with interests accruing under the same title, but at different times,* and being *tenants in common,* the right of either to compel partition in equity is provided for, and must be upheld under section 2562 of the Code, 1887.

We do not perceive the force of the objection that a life tenant of a part cannot maintain a suit against his co-tenants, who own the fee of the other part, for partition. There can be no doubt that the fee-simple owners could maintain the suit for partition against the life tenant, as defendant, and the manner in which the parties to the suit are arranged can make no difference. A party having a life estate, determinable on his marriage, in one-fifth of an estate, applied in chancery for partition. The defendants were entitled to the remaining four-fifths as tenants in common in-tail, and were together entitled to the reversion of the plaintiff's fifth. The defendants all desired that the property should remain undivided. The master of the rolls said: "*As tenant for life, I apprehend there can be no question but that he is entitled to partition,*" and it *was accordingly granted.* Freeman on Co-tenancy and Partition, sec. 455, page 554.

"*A tenant for life* of an undivided share of an estate, with remainders to his unborn sons, in-tail, may file a bill for partition; and the decree will be binding on the sons when *in esse.*" *Gaskell* v. *Gaskell*, 6 Sim. (Eng. Chy. Rpts.), 643.

"The owner of a life interest in an undivided part of land may have partition, or, if that be impracticable, a sale of the property and division of the proceeds." *Shaw & al.* v. *Beers*, 84 Ind. 528.

"When the titles are clear upon the record (whatever may be the *estates*, whether in fee, for life, or for years), the court orders a commission of partition to issue." 2 Minor's Insts., 487.

It is insisted by the appellants that, inasmuch as the will of Benjamin Sutton provides that the moiety given to Wm. M. Lynch for life shall pass at his death to his children, and said Lynch is still living, therefore the owners in remainder of that interest are unascertained. Grant that this is so. Section 2432 of the Code, under which this suit is maintained, in one aspect, provides fully for the sale of all contingent interests such as exist in this case, and was intended to facilitate the sale of property where just such difficulties existed. We are therefore of the opinion that under the statutes of Virginia, as well as upon precedent, a tenant for life in one moiety of property, may maintain a suit against those who own the estate in remainder of said moiety, whether *in esse* or not, and the fee-simple owners of the other half, and compel partition of said property; and, if not susceptible of partition in kind, may have a sale and division of the proceeds.

The second assignment of error is that the court erred in overruling the objection of J. D. Carneal to the title on the ground that it was advertised and sold as fronting 67 feet 1½ inches on Grace street, in the city of Richmond, and running back 154 feet, when as a matter of fact it fronted on Grace street only 64 feet 7 inches, the difference of 2 feet 5½ inches being embraced in a part of Jefferson street.

It appears from the record that there was a plat of this property made, distinctly showing the encroachment on Jefferson street, and that in the advertisement of the property for sale, this plat was referred to as being at the auctioneer's office, where it could be seen by any who were interested in the sale. It further appears from the record that this plat with red lines plainly defining the encroachment of 2 feet 5½

inches on Jefferson street, was exhibited at the sale, examined by bidders, and the encroachment referred to, discussed in an open and general way; that J. D. Carneal, the purchaser, had every opportunity to see and examine said plat and the papers in the cause, and that if he did not know of the encroachment of the buildings on Jefferson street, it was his own fault, and no blame attached to any one else. Carneal admits that he saw the plat at the first sale, but says that he did not examine it. His ignorance then of the fact disclosed by the plat is no excuse. "It was his duty to make enquiry, and enquiry duly pursued would have led to knowledge. It will not do for him to shut his eyes, and then say that he did not see; whenever enquiry is a duty, the party bound to make it is affected with the knowledge of all which he would have discovered, had he performed the duty. Means of knowledge with the duty of using them, are, in equity equivalent to knowledge itself." *Long et als.* v. *Weller's ex'or et als.* 29 Gratt. 347, 353-4. But is there in fact any deficiency in the width of the lot in question, growing out of the alleged encroachment of 2 feet 5½ inches on Jefferson street? The legislature, by an act approved March 10th, 1884, (see Acts 1883-'4, page 494), giving the city council power to remove buildings and other obstructions, where they encroach upon the streets, expressly provides that in every case where a building encroaches upon the street on *a corner lot*, and has so continued for a period of *twenty years, it shall constitute an adverse possession to, and confer property rights upon the persons claiming thereunder as against the city.* It appears from the record that this lot and the buildings thereon was conveyed to Benjamin Sutton, December 30, 1858. He and those holding under him had therefore been in possession at the date of the act of March 10, 1884, more than twenty-five years, and it being a corner lot, it would seem that the legislature had confirmed the title of the owners, as against the city, to the encroachment of 2

Opinion.

feet 5½ inches on Jefferson street.　See *Meyer* v. *City of Lincoln*, 29 Am. St. Reports, 500; *City of Wheeling* v. *Campbell*, 12 W. Va. 36.

For the foregoing reasons, we are of opinion that there is no error in the decree complained of, and the same must be affirmed.

AFFIRMED.